## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

BERNARD B. DAVIS,

     Petitioner,

v.                               Case No. 4:25-cv-92-MW-MJF

RICKY D. DIXON,

     Respondent.

_____/

## <u>REPORT AND RECOMMENDATION</u>

Bernard Davis, proceeding with counsel, has filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 3. Respondent ("the State") moves to dismiss the petition as untimely. Doc. 9. Davis opposes the motion. Docs. 12, 14. The undersigned concludes that no evidentiary hearing is required, and that Davis's petition should be dismissed because it is time-barred.

### I.    BACKGROUND AND PROCEDURAL HISTORY

In Leon County Circuit Court Case No. 2010-CF-1878, Davis was convicted of First-Degree Murder (Count 1) and Attempted Armed

Robbery with a Firearm (Count 2). Doc. 9-2, Ex. B1 at 182-95.[1] Davis was sentenced to imprisonment for life for the murder, and a concurrent term of 25 years of imprisonment for the attempted armed robbery. Doc. 9-18, Ex. B17.

The Florida First District Court of Appeal ("First DCA") per curiam affirmed Davis's convictions without written opinion. *Davis v. State*, No. 1D13-2817/1D13-2818, 174 So. 3d 997 (Fla. 1st DCA Sept. 24, 2015) (Table) (copy at Doc. 9-13, Ex. B12). On October 3, 2016, the United States Supreme Court denied review. *Davis v. Florida*, 580 U.S. 826 (2016) (Mem.) (copy at Doc. 9-22, Ex. C2).

On September 25, 2017, Davis, through counsel, filed a motion to correct sentence under Florida Rule of Criminal Procedure 3.800(a). Doc. 9-23, Ex. D1 at 3-13.[2] The state circuit court denied the motion. *Id*. at 14-20. The First DCA per curiam affirmed without written opinion. *Davis v. State*, No. 1D17-4599, 239 So. 3d 1196 (Fla. 1st DCA Feb. 6, 2018) (Table)

---

[1] Citations to page numbers of exhibits are to the numbers assigned by the state court at the bottom right corner of the page.

[2] Although this motion was labeled "Amended Motion to Correct Illegal Sentence," neither the CCIS Progress Docket for Leon County Circuit Court Case No. 2010-CF-1878, nor the record on appeal in First DCA Case No. 1D17-4599 reflect that an earlier version of the motion was filed. *See* Doc. 9-1, Ex. A at 6.

(copy at Doc. 9-25, Ex. D3. The mandate issued February 27, 2018. Doc. 9-26, Ex. D4.

On March 11, 2018, Davis filed a *pro se* Rule 3.800(a) motion. Doc. 9-39, Ex. H1. The state circuit court denied the motion on March 20, 2018. Doc. 9-40, Ex. H2. Davis did not appeal. Doc. 9-1, Ex. A.

On May 10, 2019, Davis, through the same counsel, filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Doc. 9-27, Ex. E1 at 3-12. On January 13, 2020, the state circuit court summarily denied the motion because it was untimely. *Id*. at 13-16. Postconviction counsel did not timely appeal, but successfully petitioned for a belated appeal. *See* Doc. 9-33, Ex. F1; Doc. 9-34, Ex. F2. Davis proceeded *pro se* on appeal. Doc. 9-33, Ex. F1. On October 6, 2021, the First DCA per curiam affirmed the denial of Davis's Rule 3.850 motion. *See Davis v. State*, No. 1D21-0542, 325 So. 3d 1047 (Fla. 1st DCA 2021) (copy at Doc. 9-31, Ex. E5). The mandate issued November 3, 2021. Doc. 9-32, Ex. E6.

On September 12, 2022, Davis, through different counsel, filed a second Rule 3.850 motion. This motion requested the court to consider the merits of the first Rule 3.850 motion, because the untimeliness of the

earlier motion was due to the mis-advice of former counsel. Doc. 9-35, Ex. G1 at 3-16. The state circuit court summarily denied the motion because it was untimely. *Id.* at 20-30 (rejecting Davis's claim that the information about the mis-advice constituted newly discovered information). On March 27, 2024, the First DCA affirmed in a written opinion. *Davis v. State*, 383 So. 3d 878 (Fla. 1st DCA 2024) (copy at Doc. 9-37, Ex. G3). The mandate issued May 2, 2024. Doc. 9-38, Ex. G4.

Ten months later Davis, represented by new counsel, filed his federal habeas petition on March 3, 2025. Doc. 1 (Pet.); Doc. 3 (Am. Pet.). The State asserts that Davis's petition must be dismissed because it was filed well beyond the one-year statute of limitations in 28 U.S.C. § 2244. Doc. 9. Davis responds that he is entitled to equitable tolling based on first postconviction counsel's negligence in failing to file Davis's first Rule 3.850 motion within Florida's two-year deadline. Doc. 12 at 1–2; Doc. 14 at 1–2.

## II.   DISCUSSION

## A.   <u>The Federal Habeas Limitations Period</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Davis's § 2254 petition, because the petition was filed

after AEDPA's effective date of April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320 (1997). AEDPA establishes a 1-year period of limitation for a state prisoner to file a federal habeas petition. *See* 28 U.S.C. § 2244(d)(1). The limitations period runs from the latest of:

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1). The limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review" is pending. 28 U.S.C. § 2244(d)(2).

Davis does not assert that an unconstitutional State-created impediment to filing his federal habeas petition existed, that he bases his claims on a right newly recognized by the United States Supreme Court,

or that the facts supporting his claims could not have been discovered through the exercise of due diligence before his judgment became final. Accordingly, the statute of limitations is measured from the remaining trigger, which is the date Davis's judgment became final. *See* 28 U.S.C. § 2244(d)(1).

## B.    Davis's Petition Is Untimely

Davis's judgment of conviction became final on October 3, 2016, when the United States Supreme Court denied Davis's petition for a writ of certiorari. *See Lugo v. Sec'y, Fla. Dep't of Corr.*, 750 F.3d 1198, 1201 (11th Cir. 2014) (citing *Clay v. United States*, 537 U.S. 522, 527 (2003)).

The federal habeas limitations period began to run one day later on October 4, 2016, and expired one year later on October 4, 2017, absent statutory tolling. *See San Martin v. McNeil*, 633 F.3d 1257, 1266 (11th Cir. 2011); *Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008).

Davis allowed 356 days of the limitations period to run before filing his counseled Rule 3.800(a) motion on September 25, 2017. As a result of the filing of that motion, the limitations period was statutorily tolled from September 25, 2017 (the date the motion was filed) until February 27,

2018 (the date the mandate issued in Davis's postconviction appeal). *See Nyland v. Moore*, 216 F.3d 1264, 1267 (11th Cir. 2000).

Davis's federal limitations period began to run again the next day on February 28, 2018, and expired 9 days later on March 8, 2018. None of Davis's later state postconviction filings triggered the tolling benefit of § 2244(d)(2), because the limitations period already had expired. *See Alexander v. Sec'y, Dep't of Corr.*, 523 F.3d 1291, 1294 (11th Cir. 2008) (a state-court motion for postconviction relief cannot toll the limitations period if that period already expired); *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000). Nor did the later filings reinitiate the federal limitations period. *Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001).

Davis's federal habeas petition, filed on March 3, 2025, is untimely *by seven years*.

## C.    <u>Davis Is Not Entitled to Equitable Tolling</u>

Davis asserts that he is entitled to equitable tolling pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012) and *Holland v. Florida*, 560 U.S. 631 (2010). Docs. 12, 14. In support, Davis alleges that his first postconviction counsel (Attorney Charles Hobbs) negligently failed to file Davis's Rule 3.850 motion within Florida's two-year limitations period, because Hobbs

mistakenly believed that the filing of a Rule 3.800(a) motion would toll the time to file the Rule 3.850 motion. Docs. 12, 14; *see also* Doc. 9-35, Ex. G1 at 11-13 (Hobbs Aff.), 14-16 (Davis Aff.). Davis alleges that he did not learn of Hobbs's error until the state circuit court denied the Rule 3.850 motion on January 10, 2020. Docs. 12, 14; *see also* Doc. 9-35, Ex. G1 at 15.

### 1.    *The Equitable Tolling Standard*

"An otherwise untimely federal petition may be considered if a prisoner can establish that he is entitled to equitable tolling." *Vahlkamp v. Sec'y, DOC*, No. 21-14052, 2022 WL 17752230, at *2 (11th Cir. Dec. 19, 2022) (citing *Holland*, 560 U.S. at 649). "[E]quitable tolling is an extraordinary remedy limited to rare and exceptional circumstances and typically applied sparingly." *Cadet v. Fla. Dep't of Corr*., 853 F.3d 1216, 1221 (11th Cir. 2017) (internal quotation marks omitted); *see also Downs*, 520 F.3d at 1318 (equitable tolling is appropriate only "in extreme cases where failure to invoke the principles of equity would lead to unacceptably unjust outcomes.").

"[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some

extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (quotations omitted). "The burden of proving circumstances that justify the application of the equitable tolling doctrine rests squarely on the petitioner." *San Martin*, 633 F.3d at 1268. The petitioner must allege more than conclusory allegations, *id*. at 1268, and must "show a causal connection between the alleged extraordinary circumstances and the late filing of the federal habeas petition." *Id*. at 1267.

### 2.    *Daivs Has Not Alleged Extraordinary Circumstances*

Davis's allegations and arguments about Attorney Hobbs's negligence fail to establish extraordinary circumstances that prevented Davis from timely filing a § 2254 petition. To the extent Davis asserts that he is entitled to equitable tolling based on the Supreme Court's narrow holding in *Martinez, supra*, Davis's reliance on *Martinez* is misplaced. "[T]he *Martinez* rule explicitly relates to excusing a procedural default of ineffective-trial-counsel claims and does not apply to AEDPA's statute of limitations or the tolling of that period." *Arthur v. Thomas*, 739 F.3d 611, 630 (11th Cir. 2014).

The standard for analyzing whether allegations of attorney misconduct rise to the level of an extraordinary circumstance to justify equitable tolling is explained in *Cadet*. *See Cadet*, 853 F.3d at 1225–27 (discussing *Lawrence v. Florida*, 549 U.S. 327 (2007); *Holland v. Florida*, 560 U.S. 631 (2010); and *Maples v. Thomas*, 565 U.S. 266 (2012)). "The first decision, *Lawrence*, squarely holds that an attorney's mistake in calculating the statute of limitations period, even when caused by the failure to do rudimentary legal research, does not justify equitable tolling." *Cadet*, 853 F.3d at 1221 (citing *Lawrence*, 549 U.S. at 336–37). "Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel." *Lawrence*, 549 U.S. at 336–37.

The second decision, *Holland*, reaffirmed that "a petitioner ordinarily 'must bear the risk of attorney error' and that a 'garden variety claim of attorney negligence,' such as a 'simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling.'" *Cadet*, 853 F.3d at 1223 (citing *Holland*, 560 U.S. at 650–52). The facts alleged in *Holland*, though, "involved more than attorney negligence of any degree." *Cadet*, 853 F.3d at 1226; *see also Maples*, 565 U.S. at 282

("The *Holland* petitioner, however, urged that attorney negligence was not the gravamen of his complaint. Rather, he asserted that his lawyer had detached himself from any trust relationship with his client: 'My lawyer has abandoned me,' the petitioner complained to the court." (quoting *Holland*, 560 U.S. at 637) (alteration adopted)).

> The attorney misconduct alleged in *Holland* was:
>
> (1) counsel's failure to file the petition on time "despite Holland's many letters that repeatedly emphasized the importance of his doing so"; (2) counsel's failure to "do the research necessary to find out the proper filing date, despite Holland's letters that went so far as to identify the applicable legal rules"; (3) counsel's failure to inform Holland that the Florida Supreme Court had affirmed the denial of his state post-conviction motion, "again despite Holland's many pleas for that information"; and (4) counsel's failure to communicate with Holland during the two-and-a-half year period in which his state motion was pending before the Florida Supreme Court, "despite various pleas from Holland that [counsel] respond to his letters." Id. at 652, 130 S. Ct. at 2564; see also id. at 636–38, 130 S. Ct. at 2555–56.
>
> And there was another critical fact in Holland. . . . During his state post-conviction proceedings, Holland had unsuccessfully sought to discharge his attorney, complaining to the Florida Supreme Court that there had been "a complete breakdown in communication," that counsel had "not kept him updated on the status of his capital case," and that counsel had "abandoned" him. Id. at 637, 130 S. Ct. at 2555 (quotation marks and alterations omitted).

*Cadet*, 853 F.3d at 1223 (quoting *Holland*, *supra*) (alteration adopted).

The *Holland* Court remanded for the lower court to determine whether the "professional misconduct" Holland alleged "amount[ed] to egregious behavior and create[d] an extraordinary circumstance that warrants equitable tolling." *Holland*, 560 U.S. at 651. *Holland* "did *not* hold that an attorney's gross negligence alone would justify tolling or even whether the facts in that case, which went beyond gross negligence, entitled Holland to equitable holding." *Cadet*, 853 F.3d at 1223–24 (emphasis added).

The third decision discussed in *Cadet* is *Maples*. The Supreme Court's analysis in *Maples* "clarified that its <u>Holland</u> decision had turned on counsel's 'abandonment' of his client, instead of on counsel's egregious errors." *Cadet*, 853 F.3d at 1225 (quoting *Maples*, 565 U.S. at 282). The *Maples* case addressed attorney abandonment in the context of excusing a procedural default. The Court found "no reason . . . why the distinction between attorney negligence and attorney abandonment should not hold in both" the equitable tolling and procedural default contexts. *Maples*, 565 U.S. at 282 n.7.

The attorney misconduct alleged by Davis—Hobbs's mistaken belief in good faith—is no more egregious than the conduct alleged in *Cadet*. In

*Cadet*, a Florida prisoner filed a *pro se* state postconviction motion after allowing 360 days of AEDPA's limitations period to run. *Id*. at 1219. Cadet retained counsel during that state postconviction proceeding. *Id*. Cadet had multiple discussions with his counsel about preserving his federal habeas rights, "became increasingly anxious about the federal limitations period," and insisted that his counsel "file a § 2254 petition 'right away.'" *Id*. at 1219–20. Cadet's attorney repeatedly and incorrectly assured Cadet that he had one year *after the denial of his postconviction appeal* to file a federal petition. *Cadet*, 853 F.3d at 1220. Cadet's attorney ultimately filed the federal petition 363 days after Cadet's state postconviction appeal concluded, but AEDPA's limitations period had long expired by then. *Cadet*, 853 F.3d at 1220.

The Eleventh Circuit assumed to Cadet's benefit that counsel's "sincere but persistent misreading of § 2244(d) after his client expressed doubt amounted to gross negligence." *Cadet*, 853 F.3d at 1225–26. But "attorney negligence, even gross or egregious negligence, does not by itself qualify as an 'extraordinary circumstance' for purposes of equitable tolling." *Cadet*, 853 F.3d at 1227. Instead, "either abandonment of the attorney-client relationship, such as may have occurred in *Holland*, *or*

some other professional misconduct *or* some other extraordinary circumstance is required" for a petitioner to be entitled to equitable tolling. *Id.* at 1227. Because Cadet "show[ed], at most, that his failure to meet the filing deadline was the product of his attorney's good faith but negligent or grossly negligent misunderstanding of the law," Cadet was not entitled to equitable tolling. *Id.* at 1237.

Here, the only extraordinary circumstance Davis identifies is some degree of attorney negligence. Davis relies on the affidavit of Attorney Hobbs as well as Davis's own affidavit which Davis provided to the state court in his second Rule 3.850 proceeding. *See* Doc. 9-35, Ex. G1 at 11-13 (Hobbs Aff.), 14-16 (Davis Aff.).

According to Hobbs's and Davis's affidavits, at some time after Davis's direct appeal concluded (Davis does not specify how long after), Davis's mother retained Attorney Hobbs "to investigate grounds [for] and file a timely motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850." Doc. 9-35, Ex. G1 at 11, 14. Hobbs needed more time and "mistakenly believed and mistakenly advised Mr. Davis that a motion to correct an illegal sentence filed pursuant to Florida Rule of Criminal Procedure 3.800 would toll the time limitation for a timely

3.850." *Id.* at 11. Believing that he was preserving Davis's state postconviction rights, Attorney Hobbs followed through and filed a Rule 3.800 motion on Davis's behalf. *Id.* at 12, 14.[3]

When the Rule 3.800 appeal concluded, Attorney Hobbs advised Davis that Hobbs "was still working on [Davis's] postconviction motion" and "still needed additional time for preparation and filing of his 3.850." *Id.* at 12, 14. Pursuant to Hobbs's advice, Davis filed a Rule 3.800 motion *pro se* on March 11, 2018, which was denied. *Id.* at 12, 14.

On May 10, 2019, Hobbs filed Davis's Rule 3.850 motion, believing it was timely under Florida law. *Id.* at 12. When the state court denied the motion as untimely, Hobbs learned for the first time that Rule 3.800 motions do not toll Florida's Rule 3.850 limitations period, and that Davis's Rule 3.850 motion was five months late. *Id.* at 12; *see also id.* at 15 (describing Hobbs's conduct as a "miscalculation").

Davis's deadline to file a § 2254 petition expired in the midst of all that—on March 8, 2018—just before Davis filed his *pro se* Rule 3.800 motion on March 11, 2018.

---

[3] Although the Rule 3.800 motion did not benefit Davis in terms of tolling Davis's *state* postconviction clock, Hobbs's filing did benefit Davis by tolling Davis's *federal* habeas clock.

Davis argues that Hobbs's "serious errors" amount to "negligence" that qualify for equitable tolling under *Holland*. Doc. 12 at 2; Doc. 14 at 1. The law is clear though. Attorney negligence, alone, is not an extraordinary circumstance that justifies equitable tolling of § 2244(d)'s limitations period.

Attorney Hobbs—like the attorney in *Cadet*—"ought to have known better or ought to have done the necessary research to know better." *Cadet*, 853 F.3d at 1233. But missing a filing deadline due to failure to do basic research is a type of "miscalculation [that] is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel." *Lawrence*, 549 U.S. at 336–37; *accord Holland*, 560 U.S. at 651–52 ("[A] garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." (citations and quotation marks omitted)); *Id.* at 652 (an attorney's failure to file a timely habeas petition and ignorance of the correct filing deadline "suggest simple negligence").

Additionally, "saying that the motion for post-conviction relief was not filed in state court soon enough to permit the federal habeas petition

to be filed on time . . . does no more to establish serious attorney misconduct of the kind *Holland* requires than the simple statement that counsel did not file promptly enough." *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1071 (11th Cir. 2011) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); and *Lawrence*, 549 U.S. at 336–37).

Because Davis fails to allege that an "extraordinary circumstance" beyond his control prevented him from timely filing his § 2254 petition, the District Court should deny Davis's claim for equitable tolling.

### 3. *Davis Has Not Alleged Diligence*

Another reason Davis's claim for equitable tolling fails is because Davis's allegations do not indicate that he exercised reasonable diligence in pursuing his federal habeas rights. Davis does not allege that during the critical one-year period following his direct appeal he took any steps to ascertain his federal filing deadline and preserve his ability to file a § 2254 petition on time. Davis alleges that he received Attorney Hobbs's advice about Florida's two-year deadline for postconviction relief, but Davis does not allege that he ever asked Hobbs about, or even mentioned, preserving his federal habeas rights.

Additionally, after Davis received the First DCA's order in his first Rule 3.850 postconviction appeal on October 6, 2021, Davis allowed *eleven months* to lapse with *nothing* pending in any state or federal court. Then, after the First DCA affirmed the denial of Davis's second Rule 3.850 motion on March 27, 2024, Davis waited *almost one full year* to file his federal habeas petition on March 3, 2025. There is no basis for statutory or equitable tolling during either of these time periods which, together, total more than 22 months.

Davis's lack of effort to advocate for himself in filing a timely federal habeas petition does not show reasonable diligence. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418–19 (2005) (no diligence where petitioner waited an additional five months after his state petition was rejected as untimely before filing his federal habeas petition); *Melson v. Comm'r, Ala. Dep't of Corr.*, 713 F.3d 1086, 1089–90 (11th Cir. 2013) (no diligence because petitioner "took no independent steps to ensure that his federal habeas petition was timely filed;" petitioner made no independent effort to locate postconviction counsel or file a federal habeas petition on his own during the 8-month period after his direct appeal concluded or during the 22-month period after his postconviction appeal concluded);

*Chavez*, 647 F.3d at 1072 (no diligence because petitioner waited 203 days after the conclusion of his state postconviction proceeding before seeking relief in federal court); *see also, e.g., Vahlkamp*, 2022 WL 17752230, at *3 (even if state postconviction counsel acted with gross negligence when he failed to file a Florida Rule 3.850 motion before the federal habeas limitations period expired, petitioner was not entitled to equitable tolling because he failed to show that he, independently, exercised reasonable diligence); *Lowe v. Fla. Dep't of Corr.*, 679 F. App'x 756, 759 (11th Cir. 2017) (declining to apply equitable tolling because petitioner failed to show diligence before and after limitations period expired).

Davis's actions in this case are a far cry from cases where courts have found reasonable diligence. *See, e.g., Holland*, 560 U.S. at 653 (petitioner "not only wrote his attorney numerous letters seeking crucial information and providing direction; he also repeatedly contacted the state courts, their clerks, and the Florida State Bar Association in an effort to have [postconviction counsel]—the central impediment to the pursuit of his legal remedy—removed from his case. And, the very day that [petitioner] discovered that his AEDPA clock had expired due to

[counsel's] failings, [petitioner] prepared his own habeas petition *pro se* and promptly filed it with the District Court"); *Cadet*, 853 F.3d at 1221 (noting petitioner's "repeated questioning of counsel's calculation of the § 2254 deadline and his insistence that the petition be timely filed").

In short, assuming the truth of Davis's allegations for equitable tolling, Davis fails to show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Lawrence*, 549 U.S. at 336 (internal quotation marks and citation omitted). Thus, Davis is not entitled to equitable tolling or an evidentiary hearing regarding same. Davis's petition should be dismissed as time-barred.

### III.  A Certificate of Appealability is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must

still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 580 U.S. 100, 115 (2017). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation, the relevant party shall file such an objection with the District Court.

## IV.  CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the District Court:

1. **GRANT** Respondent's motion to dismiss, Doc. 9.

2. **DISMISS with prejudice** Petitioner's amended habeas petition, Doc. 3, because it is time-barred.

3. **DENY** a certificate of appealability.

4. **DIRECT** the clerk of court to close this case file.

At Panama City, Florida, this <u>14th</u> day of August, 2025.

<u>/s/ Michael J. Frank</u>
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**The District Court referred this case to a magistrate judge to make recommendations regarding dispositive matters. *See* 28 U.S.C. § 636(b)(1)(B), (C). Objections to**

these proposed findings and recommendations must be filed within fourteen days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only.</u> A party must serve a copy of any objections on all other parties. A party who fails to object to this report and recommendation waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.